UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTH SEATTLE HEALTH CENTER CORP.,<br><br>                    Plaintiff,<br><br>          v.<br><br>ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO. C14-1680JLR<br><br>ORDER GRANTING DEFAULT JUDGMENT |
| ALLSTATE INDEMNITY COMPANY, et al.,<br><br>                    Third-Party Plaintiffs,<br>          v.<br><br>DAEHYUN CHOI, et al.,<br><br>                    Third-Party Defendants. | |

//

//

ORDER- 1

# I.   INTRODUCTION

Before the court is Defendant Allstate Fire & Casualty Insurance Company and Third-Party Plaintiffs Allstate Indemnity Company, Allstate Insurance Company, Allstate Property & Casualty Company, and Northbrook Indemnity Company's (collectively, "Allstate") amended motion for entry of default judgment.  (Am. Mot. (Dkt. # 49).)  The court has considered Allstate's amended motion, the balance of the record, and the applicable law.  Being fully advised, the court GRANTS Allstate's motion, but with adjustments to Allstate's asserted damages and fees as described below.

# II.   BACKGROUND

On October 31, 2014, Allstate removed this action from Snohomish County Superior Court to this court.  (Not. of Rem. (Dkt. # 1).)  Plaintiff North Seattle Health Center Corporation had filed a complaint in state court against Defendant Allstate Fire & Casualty Insurance Company alleging claims for tortious interference with a contractual and business relationship and tortious interference with business expectancy.  (Compl. (Dkt. # 1-1).)  Allstate Fire & Casualty Insurance Company filed an answer to Plaintiff's complaint that included counterclaims against Plaintiff for violation of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86, common law civil fraud, violation of Washington's Criminal Profiteering Act, RCW ch. 9A.82, unjust enrichment, and piercing the corporate veil.  (Ans. (Dkt. # 3-1) ¶¶ 7.1-10.8.)  In the answer, Allstate also brought claims against Third-Party Defendants Daehyun Choi, Hyun Joo Kwan, DRDC Corporation, Inc., Bestway Chiropractic Clinic Corporation, and Good Care Spine Clinic Corporation.  (*Id.* ¶¶ 11.1-14.4.)  Allstate's third-party claims alleged violation of the

1  corporate practice of medicine doctrine, violation of the Professional Services

2  Corporation Act, RCW ch. 18.100, violation of Washington's Anti-Rebate Statute, RCW

3  ch. 19.68, violation of Washington's CPA, common law civil fraud, violation of

4  Washington's Criminal Profiteering Act, unjust enrichment, and piercing the corporate

5  veil.  (*Id.* ¶¶ 15.1-22.8.)

6        Allstate alleged that Plaintiff and Third-Party Defendants were involved in the

7  business of operating medical clinics.  (*See, e.g.*, *id.* ¶¶ 6.5, 11.3, 12.4, 13.4, 14.3.)  The

8  Third-Party Defendant medical clinics were all allegedly owned and operated by the

9  same individual.  (*See, e.g.*, *id.* ¶ 11.2.)  Allstate alleged that Plaintiff and the Third-

10  Party Defendants engaged in duplicative billing practices for the services provided to their

11  patients and unnecessary referrals to related clinics.  (*See id.* ¶¶ 11.5, 17.5-17.6.)

12        On August 25 and 27, 2015, Allstate moved for the entry of default against

13  Plaintiff and Third-Party Defendants as a sanction for discovery violations and failure to

14  abide by the court's prior orders.  (*See* Mot. for Default (Dkt. # 34); Supp. Mot. for

15  Default (Dkt. # 36).)  On September 17, 2015, the court held a hearing concerning

16  Allstate's motions for sanctions and default based on Plaintiff's and Third-Party

17  Defendants' failure to obtain counsel as ordered by the court and respond to Allstate's

18  discovery requests.  (*See* 9/17/15 Min. Entry (Dkt. # 38).)  Neither Plaintiff, nor Third-

19  Party Defendants responded to Allstate's motions or appeared at the September 17, 2015,

20  hearing.  (*See id.*; *see generally* Dkt.)  At the hearing, the court granted Allstate's

21  motions, dismissed Plaintiff's claims, and found Plaintiff and Third-Party Defendants in

22  default.  (9/17/15 Min. Entry.)

1    On December 2, 2015, Allstate moved for entry of default judgment against

2    Plaintiff and Third-Party Defendants.  (Mot. (Dkt. # 41).)  The court denied Allstate's

3    motion without prejudice to Allstate filing an amended motion in accord with the court's

4    directives and further dismissed all of Allstate's claims except its CPA claims as either

5    inadequately pleaded or waived.  (1/27/16 Order (Dkt. # 46) at 6 n.3, 9, 12-13.)  The

6    court directed that any amended motion for default judgment be in accord with the

7    parameters established in the court's order, which limited Allstate's amended motion to

8    its CPA claims against Plaintiff and Third-Party Defendants.[1]  The court also directed

9

10

---

11    [1] In its amended motion, Allstate asserts that "[t]he [c]ourt has affirmed all causes of
action alleged by Allstate."  (Am. Mot. at 5.)  This statement is not supported by any citation to
12    the record and is incorrect.  In asserting that the court "has affirmed" its causes of action, Allstate
apparently relies upon the court's order granting default.  (See 9/17/15 Min. Entry.)  As the court
13    has previously explained, however, there is a distinction between the entry of default and the
entry of default judgment.  (See 1/27/16 Order at 4.)  In its motions for sanctions under Federal
14    Rule Civil Procedure 37, Allstate requested only the entry of default against Plaintiff and Third-
Party Defendants as a sanction under Federal Rule of Civil Procedure 37, not the entry of default
15    judgment (see Mot. for Default; Supp. Mot. for Default), and default is all the court granted (see
9/17/15 Min. Entry).  An order of default does not "affirm all causes of action alleged by
16    Allstate" as asserted by Allstate.  The court's entry of default is only the first step to obtaining a
default judgment against another party.  See Fed. R. Civ. P. 55(a), (b); Local Rules W.D. Wash.
17    LCR 55(b)(1) ("No motion for judgment by default should be filed against a party unless the
court has previously granted a motion for default against that party pursuant to LCR 55(a) or
18    unless default otherwise has been entered.").  Indeed, rather than being "affirmed," most of
Allstate's claims did not survive the court's prior order.  (See generally 1/27/15 Order.)  The
19    court either dismissed Allstate's other claims as insufficiently pleaded to support a motion for
default judgment (id. at 6-9 (explaining that Allstate's claims for civil fraud and violations of
20    the Criminal Profiteering Act fail to meet the pleading standards of Federal Rule of Civil Procedure
9(b))) or ruled that they were waived as a result of Allstate's failure to assert them in its original
21    motion for default judgment (id. at 6 n.3).  Thus, only Allstate's CPA claims against Plaintiff and
Third-Party Defendants remain viable following the court's January 27, 2016, order.  (See id. at
22    10 ("Allstate's allegations concerning its CPA claims are sufficient under [the applicable
pleading] standard."); see also id. at 12 ("Allstate may re-file its motion for default judgment
based on its CPA claims against Plaintiff and Third-Party Defendants.").)

ORDER- 4

1    Allstate to provide the court with proof of its damages and attorney's fees.[2]  (*Id.* at 12-

2    13.)  Allstate did not move for reconsideration of the court's order.  (*See generally* Dkt.)

3           Allstate filed an amended motion for default judgment on February 16, 2016.

4    (Am. Mot.)  Allstate did not, however, limit its amended motion for default judgment to

5    its CPA claims against Plaintiff and Third-Party Defendants as directed by the court in

6    the court's January 27, 2016, order.  (*See* 1/27/16 Order at 12.)  Instead, Allstate moved

7    for default judgment on its claims for violation of the CPA (Am. Mot. at 22-25), civil

8    fraud (*id.* at 25-26), violations of the Criminal Profiteering Act (*id.* at 26-30), and

9    violations of the Anti-Rebating Statute (*id.* at 31-32).  The court now considers Allstate's

10   amended motion for default judgment.

11                                 **III.    ANALYSIS**

12          The court's entry of default is the first step to obtaining a default judgment against

13   another party.  *See* Local Rules W.D. Wash. LCR 55(a), (b)(1).  Therefore, although the

14

15          [2] In its order, the court noted that "Allstate did not ask for a hearing on its motion for
     default judgment or to submit any additional evidence in the form of live testimony or

16   otherwise."  (1/27/16 Order at 4.)  Allstate counters in its amended motion that one of its
     attorneys called the court and requested a hearing on its original motion for default judgment.

17   (*See* Am. Mot. at 4 (citing Leid Decl. (Dkt. # 50) ¶ 2 ("I called Judge Robart's court to request a
     date for a hearing on the default judgment.")).)  Placing a phone call to the court to request oral

18   argument on a motion is in violation of the court's Local Rules.  *See* Local Rules W.D. Wash.
     LCR 7(b)(4) ("A party desiring oral argument shall so indicate by including the words 'ORAL

19   ARGUMENT REQUESTED' in the caption of its motion or responsive memorandum.").
     Further, except as delineated in its Local Rules, the court does not accept oral requests over the

20   telephone.  *See, e.g.*, Local Rules W.D. Wash. LCR 7(i) (permitting the parties to jointly call the
     court to request a telephonic motion).  Requests to the court must be in writing and filed as

21   motions on the court's docket.  *See id.* LCR 7(b).  If Allstate wanted to present live testimony to
     the court it should have included that request in its motion or filed a separate written request on

22   the court's docket.  The court notes that Allstate has requested neither oral argument (*see* Am.
     Mot. at 1) nor the submission of live testimony with respect to its amended motion for default
     judgment (*see generally id*).

1  court entered default as a Federal Rule of Civil Procedure 37 sanction against Plaintiff

2  and Third-Party Defendants (*see* 9/17/15 Min. Entry), Allstate is still required to move

3  for default judgment, *see* Local Rules W.D. Wash. LCR 55(b)(1), (2).  Courts have wide

4  discretion in deciding whether to enter a default judgment.[3]  *See* Fed. R. Civ. P. 55;

5  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

6  　　"The general rule of law is that upon default, the factual allegations of the

7  complaint, except those relating to the amount of damages, will be taken as true."

8  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam).  However,

9  "necessary facts not contained in the pleadings, and claims which are legally insufficient

10  are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267

11  (9th Cir. 1992).  A court, therefore, may not enter default judgment on the basis of

12  insufficient pleadings.  *Id.*; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.

13  1978) ("[F]acts which are not established by the pleadings of the prevailing party, or

14  claims which are not well-pleaded, are not binding and cannot support the [default]

15  judgment.").  Thus, before the court may exercise its discretion to enter a default

16  judgment, it first must determine whether the moving party has stated viable claims upon

17

18  ――――――――――――――――

19  　　[3] Ordinarily, the court considers the factors set forth in *Eitel v. McCool*, 782 F.2d 1470,
    1472 (9th Cir. 1986), when determining whether to exercise its discretion to grant a motion for

20  entry of default judgment.  As the court discussed in its previous order, not all of the *Eitel* factors
    are relevant in circumstances where the court has entered default as a Federal Rule of Civil

21  Procedure 37 sanction rather than because the party has failed to plead or otherwise defend under
    Rule 55(a).  (*See* 1/27/16 Order at 3 n.1.)  Here, the court considers the merits of Allstate's

22  claims, the sufficiency of its counterclaims and third-party claims, and the amount at stake as
    relevant *Eitel* factors.  (*See id.*)

1   which a default judgment may rest. *See Pac. Bus. Cap. Corp. v. Globex Brands, Inc.*, No.

2   SACV-09-866 DOC (ANx), 2011 WL 66337, at *2 (C.D. Cal. Jan. 7, 2011).

3           In its prior motion, Allstate moved for default judgment on only three claims: (1)

4   the CPA, (2) civil fraud, and (3) the Criminal Profiteering Act.  (Mot. for Default at 4-8.)

5   In its prior order, the court held that Allstate's CPA claims against Plaintiff and Third-

6   Party Defendants were Allstate's only viable claims to support a default judgment.

7   (1/27/16 Order at 6 ("[T]he court finds that only one of these claims—the claim

8   predicated on violation of the CPA—is sufficiently pleaded to support Allstate's motion

9   for default judgment.").)  The court found that Allstate's claims for civil fraud and for

10  violations of the Criminal Profiteering Act were insufficiently pleaded pursuant to the

11  heightened pleading standards of Rule 9(b) and therefore could not support entry of

12  default judgment.  (*Id.* at 6-9.)  In addition, the court found that Allstate had waived the

13  entry of default judgment on the remainder of its claims by failing to move for default

14  judgment on those claims.  (*Id.* at 6 n.3.)  Accordingly, the court permitted Allstate to file

15  an amended motion for default judgment but only with respect to its CPA claims.  (*Id.* at

16  12 ("Allstate may re-file its motion for default judgment based on its CPA claims against

17  Plaintiff and Third-Party Defendants.").)

18          In direct contravention of the court's order, Allstate filed an amended motion for

19  default judgment not only on its CPA claims (Am. Mot. at 22-25) but also on its claims

20  for civil fraud (*id.* at 25-26), violations for the Criminal Profiteering Act (*id.* at 26-30),

21  and violations of the Anti-Rebating Statute (*id.* at 31-32).  Allstate never moved for

22  reconsideration of the court's January 27, 2016, order (*see generally* Dkt.), and it may not

1  simply ignore the court's prior order.  Accordingly, the court DENIES Allstate's motion

2  for entry of default judgment with respect to all of Allstate's claims except for Allstate's

3  CPA claims against Plaintiff and Third-Party Defendants.  Because the court has already

4  determined that Allstate's CPA claims are sufficiently pleaded (1/27/16 Order at 6), the

5  court now considers whether Allstate has sufficiently proved its claims for damages

6  under the CPA.  *See Geddes*, 559 F.2d at 560.

7  **A. Damages under the CPA**

8      The court directed Allstate to address two issues in its amended motion for default

9  judgment with respect to the damages Allstate claimed.  First, the court directed Allstate

10 to explain why it is legally entitled to recover payments made to parties not named in its

11 counterclaims or third-party claims, including Personal Injury Protection ("PIP")

12 payments to North Seattle Pain Clinic, North Seattle Clinic, Good Care Chiropractic,

13 Chung Song Ja Corp., and third-party payments to North Seattle Clinic, North Seattle

14 Pain Clinic, Sungjun Chung, and Nataliya Kozak.  (1/27/16 Order at 10-11.)  Second, the

15 court directed Allstate to provide back-up documentation to corroborate Allstate's alleged

16 damages as described in its "damage model."  (*See id.* at 11.)

17     In response to the court's directive, Allstate dramatically reduced the amount of

18 damages it is asserting.  In its original motion for default judgment, Allstate claimed

19 $610,287.43 in PIP payments and $355,139.51 in third-party payments for a total of

20 $965,426.94.  (Mot. at 3.)  In its amended motion, Allstate has eliminated any claim for

21 third-party payments and reduced its claim for PIP payment to $413,586.20.  (Am. Mot.

22

1   at 8.)  At least a part of the reduction in PIP payments appears to be due to Allstate's

2   elimination of any claim for payments to Good Care Chiropractic.  (*See id*.)

3           In its amended motion, Allstate requests recovery for PIP payments made to

4   Plaintiff North Seattle Health Center, Third-Party Defendants Bestway Chiropractic

5   Clinic and Good Care Spine Clinic, and non-parties "Chung Song Ja Corp.," "North

6   Seattle Clinic," and "North Seattle Pain Clinic," which is also known as "NS Pain

7   Clinic."  (Am. Mot. at 8.)  In compliance with the court's January 27, 2016, order,

8   Allstate provides documentation showing that Plaintiff North Seattle Health Center and

9   "Chung Song Ja Corporation" are names for the same business entity.  (Leid Decl. (Dkt.

10  # 50) Ex. B.)  Accordingly, the court is satisfied that Allstate's payments to Chung Song

11  Ja Corporation may be included as part of its claim for damages on default judgment.

12  Additionally, Allstate provides documentation that Third-Party Defendant DRDC Corp.

13  deposited checks that Allstate wrote to "NS Pain Clinic."  (*See, e.g.*, Green Decl. (Dkt.

14  # 51) Ex. B at 1.)  Thus, the court is satisfied that Allstate has sufficiently proven its

15  ability to also recover its PIP payments to "North Seattle Pain Clinic," which is also

16  known as "NS Pain Clinic."

17          However, despite the court's January 27, 2016, order directing Allstate to explain

18  why it is entitled to payments it made to non-party North Seattle Clinic (*see* 1/27/16

19  Order at 10-11), Allstate failed to establish that any of the parties named in Allstate's

20  counterclaims and third-party claims are liable for Allstate's payments made to non-party

21  "North Seattle Clinic."  (*See generally* Green Decl.)  All of the checks provided by

22  Allstate that are written to "North Seattle Clinic" are also endorsed by "North Seattle

ORDER- 9

1   Clinic." (*Id.* Ex. B.)  "North Seattle Clinic" is not a party named in this matter.  (*See*

2   *generally* Ans.)  Allstate has failed to provide any evidence connecting its payments to

3   "North Seattle Clinic" to Plaintiff or any Third-Party Defendant.  (*See* Am. Mot. at 8;

4   Green Decl. Ex. A.)  Thus, the court disallows Allstate's claim for $117,592.46 that it

5   paid to North Seattle Clinic and reduces Allstate's claim of $413,586.20 for "Total PIP

6   Payments" by this amount.  Accordingly, the court awards Allstate actual damages on its

7   CPA claim in the amount of $295,993.74.  (*See* Am. Mot. at 8.)

8   **B. Enhanced Damages under the CPA**

9       Allstate also encourages this court to award treble damages in the amount of

10  $1,240,758.60 ($413,586.20 x 3) pursuant to its claim for violations of the Criminal

11  Profiteering Act.  (*See id.* at 30.)  As discussed above, the court denies Allstate's motion

12  for default judgment on this claim because Allstate failed to adequately plead it under

13  Rule 9(b).  (*See* 1/27/16 Order at 9.)  Indeed, the court specifically denied Allstate's

14  claim for trebled damages under the Criminal Profiteering Act in its prior order.  (1/27/16

15  Order at 9 n.5.)

16      Allstate, however, is entitled to seek an award of treble damages based on its CPA

17  claims.  *See* RCW 19.86.090.  Such an award is within the court's discretion and "may

18  not exceed twenty-five thousand dollars [$25,000.00]."[4]  *Edmonds v. John L. Scott Real*

19

20      [4] In its amended motion, Allstate alleges that the CPA's statutory maximum of treble
21  damages is "up to $25,000 per violation."  (Am. Mot. at 25.)  The court rejects the notion that
    each invoice Allstate claims as a part of its damages represents a separate violation of the CPA
22  or a separate harm to Allstate.  Allstate has alleged a unitary course of conduct in its allegations
    against Plaintiff and Third-Party Defendants.  (*See generally* Ans.)  "[M]ultiple awards of

1   *Estate, Inc.*, 942 P.2d 1071, 1081 (Wash. Ct. App. 1997); RCW 19.86.090.  Allstate

2   alleges that Plaintiff and Third-Party Defendants were involved in the business of

3   providing medical services through clinics owned and operated by an individual who did

4   not have the appropriate licensing to run such clinics.  (*See* Ans. ¶¶ 6.5, 11.2-11.3,

5   11.6-11.8, 12.4, 13.4, 14.3.)  Moreover, Plaintiff and Third-Party Defendants allegedly

6   engaged in duplicative billing practices for the services provided to their patients and

7   unnecessary referrals to related clinics.  (*See id.* ¶¶ 11.5, 17.5-17.6.)  In light of these

8   alleged practices, the court finds that Allstate is entitled to treble damages of $25,000.00,

9   which is the maximum amount allowed under the CPA.  *See* RCW 19.86.090.

10  //

11  //

12

13

14

15

16

17

18

19

20  exemplary damages are not authorized by the statute where more than one CPA violation results
21  in a single harm." *Edmonds*, 942 P.2d at 1081; *see also In re Bryce*, 491 B.R. 157, 170 (Bankr.
    W.D. Wash. 2013) (finding two separate CPA injuries when two separate statutes were violated).
22  In any event, in the context of this motion for default judgment, the court declines to exercise its
    discretion to award Allstate treble damages totaling more than $25,000.00.

1  **C.  Reasonable Attorney Fees under the CPA**

2          Because Allstate prevailed on its CPA claims against Plaintiff and Third-Party

3  Defendants, Allstate is entitled to recover its attorneys' fees under the statute.  *See* RCW

4  19.86.090.  In its January 27, 2016, order, the court directed Allstate to provide back-up

5  documentation to support its claim for attorney fees so the court could determine the

6  reasonableness of Allstate's request.  (1/27/16 Order at 11-13.)  Under Washington law,[5]

7  the court may not simply rely on Allstate's billing record but must independently

8  determine whether Allstate has sustained its burden of demonstrating that the number of

9  hours expended by counsel was reasonable.  *See Mayer v. City of Seattle*, 10 P.3d 408,

10 415 (Wash. Ct. App. 2000); *see also SentinelC3, Inc. v. Hunt*, 331 P.3d 40, 48 (Wash.

11 2014) ("In determining an award of attorney's fees, the trial court may not rely solely on

12 counsel's fee affidavit.").  The documentation of hours expended by counsel "need not be

13 exhaustive or in minute detail, but must inform the court . . . of the type of work

14 performed . . . ."  *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash.

15 1983).  Here, the court finds that the billing records submitted by Allstate generally meet

16 the standard set forth in *Bowers*.

17         A district court's award of attorney fees is reviewed for abuse of discretion.  *See*

18 *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005).  Courts calculate attorney

19

20 _____

21         [5] In diversity cases, the right to attorney fees is governed by state law.  *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 412 U.S. 240, 295 n.31 (1975)).  The method of calculating reasonable attorney fees in diversity jurisdiction cases is also governed by state law.

22 *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995).

fee awards under the Washington CPA by first "establishing a 'lodestar' fee by multiplying a reasonable hourly rate by the number of hours reasonably expended on theories necessary to establishing the elements of a Consumer Protection Act cause of action." *Wash. State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1073 (Wash. 1993).  Second, the court adjusts the lodestar fee up or down based upon the contingent nature of success (risk) and, "in exceptional circumstances, based also on the quality of work performed." *Id.*  "Attorneys seeking fees must provide reasonable documentation of work performed to calculate the number of hours . . . ." *Id.*  Whether attorney's fees are reasonable is a factual inquiry depending on the circumstances of a given case and the court is accorded broad discretion in fixing the amount of fees.  *Id.*; *see also Schmidt v. Cornerstone Invs., Inc.*, 795 P.2d 1143, 1153 (Wash. 1990).

     *1.  Reasonable Hourly Rate*

     The court first determines whether Allstate's attorneys' hourly rates are reasonable.  "[W]hen attorneys have an established rate for billing clients, that rate will likely be considered as reasonable." *Wash. State Physicians*, 858 P.2d at 1073.  However, "[w]hether attorney fees are reasonable is a question of fact to be answered in light of the particular circumstances of each individual case." *Schmidt*, 795 P.2d at 1153.  Allstate provides the court with an itemization of its attorneys' billing in this matter.  (Leid Decl. Ex. A.)  Allstate's attorneys charged rates ranging between $155.00 per hour

1    to $180.00 per hour.[6]  (*Id.*)  The court concludes that Allstate's attorneys' rates for legal

2    services are generally reasonable for this geographic market.

3          However, some of Allstate's billing records indicate that Allstate's attorneys billed

4    for administrative functions or paralegal tasks such as data entry at hourly rates

5    applicable for legal work.  (*See, e.g.*, Leid Decl. Ex. A at 7, ln. 241.)  As noted above, the

6    court has broad discretion in fixing fees.  *Schmidt*, 795 P.2d at 1153.  The record

7    indicates that Allstate's attorneys charged paralegal work at $100 per hour.  (*See* Leid

8    Decl. Ex. A at 12, ln. 382-84, 392.)  Accordingly, the court adjusts Allstate's billing rates

9    to $100.00 per hour for the administrative or paralegal tasks performed by counsel.  Due

10   to this minor rate adjustment, the court reduces Allstate's fee request by $1,608.75.[7]

11         *2. Reasonable Number of Hours*

12         Next, the court considers the reasonableness of the number of hours expended by

13   Allstate's counsel in this matter.  Under Washington law, "[t]he total hours an attorney

14   has recorded for work in a case is to be discounted for hours spent on 'unsuccessful

15   claims . . . or otherwise unproductive time.'"  *Miller v. Kenny*, 325 P.3d 278, 303 (Wash.

16   _____

17         [6] The court recognizes that there are also entries billed at $100.00 per hour.  (Leid
18   Ex. A at 12 ln. 382-84, 392.)  The tasks described at that rate appear to be the work of a
     paralegal.  (*See id.*)  The court determines that this rate for paralegal services is also reasonable.

19         [7] The descriptions of work performed in the entries found in lines 241, 279, 511, 513,
     517, 520, and 535 reflect a combination of both legal analysis and data entry.  (Leid Decl. Ex. A
20   at 7, 9, 16, 17.)  To establish a reasonable rate, the court adjusts each of these entries so that half
     of the time in each entry is billed at the hourly attorney rate and half of the time is billed at the
21   established paralegal rate of $100.00 (*see supra* note 6), for a reduction of $893.75.
     Additionally, the tasks described on lines 266, 270, 277, and 534 appear to be purely
22   administrative in nature.  (*See* Leid Decl. Ex. A at 8, 9, 17.)  Accordingly, the court adjusts the
     rate to $100.00 per hour for the tasks entered in these lines for an addition reduction of $715.00.

1   Ct. App. 2014) (quoting *Bowers*, 675 P.2d at 203.  Washington courts instruct that a trial

2   court must segregate fees where possible, but may avoid doing so if the claims are "so

3   related that no reasonable segregation . . . can be made." *Hume v. Am. Disposal Co.*, 880

4   P.2d 988, 997 (Wash. 1994); *see also Elliott v. BNSF Ry. Co.*, No C14-5054RBL, 2015

5   WL 6694145, at *3-4 (W.D. Wash. Nov. 2, 2015) (establishing the lodestar amount

6   through both line-item exclusions for unreasonable fees and percentage reductions for

7   other groups of fees).  In addition, an award of attorney fees under the CPA provides for

8   recovery of fees related to the CPA claim only.  *See Wash. State Physicians*, 858 P.2d at

9   1073.  Fees associated with other claims should be segregated if possible.  *See id.*

10  (finding that trial court did not abuse its discretion when it  reduced the number of hours

11  expended on the entire case by 50% to account for the hours attributable to theories not

12  necessary to prove the CPA claim).

13          First, the court notes that Allstate filed an initial motion for default judgment that

14  was unsuccessful.  (*See generally* Mot.; 1/27/16 Order.)  Pursuant to the authority cited

15  above, the court segregates the time Allstate spent drafting its inadequate initial motion

16  for default judgment and reduces Allstate's award of attorney's fees by an amount

17  commensurate with this task.[8]   Allstate's counsel charged a total of $2,288.50 for work

18  on the unsuccessful motion, and the court therefore further reduces Allstate's fee award

19  by this amount.

20

21  _____

22          [8] On this basis, the court rejects the fees reflected in lines 548, 551, 554, 556, 557, 562, 563, 566, 567, 569, 571, 574, 576, 578, 580, 586, 590, and 603.  (Leid Decl. Ex. A at 17-19.)

1    Next, the court considers what portion of the hours Allstate spent on the entire

2   case were necessary for Allstate's development of its CPA claim.  Allstate failed to

3   apportion time in its billing statements between hours allocated to its CPA claim and

4   hours allocated to other causes of action, and Allstate also failed to adjust its request for

5   attorney's fees to account for its work on other legal theories.  (*See generally* Leid Decl.,

6   Ex. A.)  When the court is not provided with a detailed account of the hours spent on only

7   the prevailing claims, an overall percentage reduction is warranted.  *See Cox v. Cont'l*

8   *Cas. Co.*, No. C13-2288MJP, 2015 WL 3844270, at *7 (W.D. Wash. June 19, 2015)

9   (acknowledging that the necessary evidence for both the prevailing claims and

10   unsuccessful claims overlapped, but still reducing the overall attorney fees by one-third

11   to account for the time spent on unsuccessful legal theories).  Although the court finds

12   that it is not possible to segregate the time Allstate's attorneys spent on its successful

13   CPA claims, the court reviewed and ruled upon all of the parties' pretrial motions.  Thus,

14   the court is capable of estimating the percentage of hours necessary to develop Allstate's

15   CPA claims as opposed it to its other legal theories.  *See Yousoufain v. Office of Ron*

16   *Sims*, 60 P.3d 667, 676-77 (Wash. Ct. App. 2004) (affirming trial court's percentage

17   reduction in fee application), *rev'd in part on other grounds*, 98 P.3d 463 (Wash. 2004);

18   *see also Gates v. Deuknejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (affirming across-the-

19   board percentage reduction in fees "when faced with a massive fee application" where

20   district court appropriately describes its rationale for doing so); *Clausen v. Icicle*

21   *Seafoods, Inc.*, 272 P.3d 827, 834 (Wash. 2012) (upholding trial court's percentage

22

1  reduction in fees in context of maintenance and cure action "where the specifics of the

2  case make segregating the actual hours difficult").

3        In determining the appropriate percentage reduction in Allstate's fee request for

4  non-CPA claims, the court notes that this case is fact intensive.  Most of the attorneys'

5  hours in this case were spent in developing facts applicable to all of Allstate's claims,

6  including its CPA claims.   For example, establishing the various connections between

7  Plaintiff and Third-Party Defendants and the impropriety of Plaintiff's and Third-Party

8  Defendants' billing practices are facts that underpin all of Allstate's legal claims.  Thus,

9  the court finds that a significant portion of Allstate's attorney fees were dedicated to the

10  factual development of this overall scheme and only a small portion of attorney time was

11  spent developing the individual legal theories underlying Allstate's claims.  Accordingly,

12  the court finds that an overall 10% reduction in Allstate's remaining fees sufficiently

13  accounts for the hours spent pursuing non-CPA claims.

14        In sum, the court reduces Allstate's request for attorney fees ($62,957.50) by

15  $3,897.25 to address entries for administrative tasks and unproductive time spent on its

16  unsuccessful initial motion for default judgment.  The court further reduces Allstate's

17  remaining requested attorney fees ($59,060.25) by 10% ($5,906.03) to adjust for attorney

18  fees related to Allstate's prosecution of non-CPA claims.  Thus, the court grants

19  Allstate's request for an award of attorney's fees in the amount of $53,154.22.

20                              **IV.   CONCLUSION**

21        For the foregoing reasons, the court GRANTS Allstate's motion for default

22  judgment (Dkt. # 49), but with adjustments to Allstate's asserted damages and fees as

ORDER- 17

1    described herein.  The court awards Allstate $295,993.74 in actual damages, $25,000.00

2    in treble damages under the CPA, and $53,154.22 in attorney fees.  In total, the court

3    awards Allstate $374,147.96 in damages and fees on its motion for default judgment

4    against Plaintiff and Third-Party Defendants.

5        Dated this 26th day of April, 2016.

6

7

8    _____

9    JAMES L. ROBART
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 18